(No. 13901.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ROBERT M. DAVIDSON, Plaintiff in Error.

*Opinion filed June 22, 1921.*

1. CRIMINAL LAW—*first count of indictment is not void because count on last page, containing indorsements, is nollied.* The fact that a *nollied* count is on the last page of the indictment, on which are indorsed the names of the foreman of the grand jury and of the witnesses for the prosecution, does not vitiate the first count, as the indorsements on the back of the indictment apply to and are referable to each count.

2. SAME—*when improper remarks of witness will not reverse.* In a prosecution for the confidence game, improper remarks by the prosecuting witness while on the stand will not cause a reversal where the court promptly orders the statements stricken and advises the jury to disregard them, and where the defendant makes no objection nor requests a ruling.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JOSEPH SABATH, Judge, presiding.

JAMES T. DEVERE, and GEORGE McMAHON, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and EDWARD C. FITCH, (EDWARD E. WILSON, and HENRY T. CHACE, JR., of counsel,) for the People.

Mr. JUSTICE FARMER delivered the opinion of the court:

Plaintiff in error was convicted in the criminal court of Cook county for obtaining money from Mrs. Catherine S. Tully by means and by use of the confidence game and has sued out a writ of error to review the judgment.

There were two counts in the indictment. The first charged obtaining money by the confidence game, and the second charged larceny. The second count of the indictment was *nollied* and a trial and conviction had under the first count.

The first objection raised is, that there is no record of any legal indictment against the defendant; that the count under which he was convicted is not signed by the State's attorney; that it is not indorsed on the back with the name of the foreman of the grand jury nor with the name of any complaining witness. The second count of the indictment constituted the back of the indictment, on which were indorsed the names of the foreman of the grand jury and of the witnesses for the prosecution, and it was also signed by the State's attorney. The position of plaintiff in error is, that the second count of the indictment being *nollied,* the first count must be considered as an independent indictment and in no way related or connected with the second count. No authorities are cited to support that contention and we are satisfied none could be found, for the position is wholly untenable. The indorsements on the back of

the indictment applied and were referable to each count of it, and the *nollieing* of the last count, on the back of which all the indorsements were made, could not affect the remaining count.

The money alleged to have been obtained was the money of Mrs. Tully. She had been for many years a trusted employee of the Snyder Preserve Company. She appears to have been accused by her employer of dishonesty in connection with the money of the company. Through the recommendation of an acquaintance she consulted defendant, who was at that time a member of the bar, and he advised her that she had a good cause of action for slander. She engaged him to bring suit against the Snyder Preserve Company and certain individuals. She advanced $20 to pay costs and defendant agreed to bring the suit on a contingent fee. The suit was filed. It appears that about the time of Mrs. Tully's difficulty with her employer its safe was robbed, and among the things taken from it were bonds of Mrs. Tully amounting to $4400. After bringing the suit defendant told Mrs. Tully a detective named Edwards, employed by a detective agency, had been working on the case and had reports which would show who robbed the safe and got Mrs. Tully's bonds. He said he offered the detective $25 for the reports but that he asked $1000. Mrs. Tully authorized defendant to offer the detective one of the $1000 bonds if he could disclose to her where the bonds were. Defendant reported he had seen the detective but that he demanded $1000 in cash. Finally, after some further pretended negotiations between Edwards and defendant, Mrs. Tully gave defendant $1000. The reports of the detective were never procured, and after numerous delays and excuses for the delays by the defendant Mrs. Tully demanded her $1000. Defendant promised to return the money and fixed several dates at which he would do so but never returned it. He admitted using it in his own business. Mrs. Tully employed counsel to procure her money,

but he failed. Defendant does not deny getting the money from Mrs. Tully nor the purpose for which he received it, but claims after he was unable to get the detective reports from Edwards he told Mrs. Tully he needed the money for use for a short time and that she consented that he might use it. The substance of his defense is that he procured the money not for the purpose of defrauding Mrs. Tully but to be paid to the detective, and that when he was unable to get the reports from the detective he borrowed the money from Mrs. Tully intending in good faith to re-pay it but was unable to do so. Edwards was not at the trial and defendant said he had been unable to locate him. The jury evidently considered Edwards a myth, and in our opinion they were warranted by the evidence in doing so.

It is further contended that defendant was prejudiced by incompetent testimony of Mrs. Tully. During her testimony she volunteered the statement that she had found out the defendant had served time in a penitentiary. The court immediately said: "Strike that out." The witness said: "Well, he did." The court: "Strike out that remark." The witness: "We have the record." The court: "The jury will disregard the statement; remarks of that kind are cause for a new trial sometimes; I ask the jury to disregard the statement." No objection was made by defendant nor any request for a ruling by the court. The evidence was improper, but without any objection or suggestion of defendant the court promptly ordered it stricken out and told the jury to disregard it. No ruling of the court is therefore complained of, and in our view of the evidence the improper statements of the witness would not justify a reversal of the judgment.

Complaint is made of the refusal to give an instruction for defendant that the State was required to prove every material allegation of the indictment beyond a reasonable doubt. That subject was amply covered by instructions given.

Complaint is also made of the refusal of two other instructions, but we are of opinion defendant was not prejudiced by that action of the court.

The whole evidence, including the testimony of defendant himself, abundantly supported the verdict and judgment, and the judgment will be affirmed.

*Judgment affirmed.*